UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN CHRISTINE RUSSELL, | No. 2:21-cv-01595 CKD |
| Plaintiff, | |
| v. | ORDER |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively. The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born in 1964, has a high school education and worked as a retail store manager, sales associate, cashier, and kitchen helper over a 15-year period. Administrative Transcript ("AT") 29, 76, 236. In April 2019, she applied for DIB and SSI, alleging disability beginning

March 29, 2019, later amended to July 2, 2019. AT 18, 74. Plaintiff alleged she was unable to work due to pain, headaches, sleep apnea, asthma, anxiety, and depression. AT 289. At the October 20, 2020, hearing, plaintiff testified that the biggest medical problems preventing her from her from working were fibromyalgia and depression. AT 76. In a decision dated November 4, 2020, the ALJ determined that plaintiff was not disabled.[1] AT 18-30. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.
>
> 2. The claimant has not engaged in substantial gainful activity since July 2, 2019, the amended alleged onset date.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

      3. The claimant has the following severe impairments: fibromyalgia, obesity, and asthma.

      4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

      5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work except with the following limitations: frequently climbing ramps and stairs, balancing, stooping, kneeling, and crouching; occasionally climbing ladders and scaffolds and crawling; no work around unprotected heights; and avoid concentrated exposure to fumes, dusts, odors, gases, poorly ventilated areas, and chemicals.

      6. The claimant is capable of performing past relevant work as a retail store manager, a sales associate, and a cashier II. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

      7. The claimant has not been under a disability, as defined in the Social Security Act, from July 2, 2019, through the date of this decision.

AT 21-29.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ failed to consider the impact of plaintiff's fatigue on her functioning; (2) the ALJ failed to give legally adequate reasons for rejecting plaintiff's testimony; and (3) the ALJ failed to specify the evidence from which he determined plaintiff could perform medium work.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is

responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

Plaintiff argues that the RFC is not supported by substantial evidence because the ALJ did not consider the impact of her fatigue on her ability to perform sustained work. See Robbins v. Soc. Sec. Admin, 466 F.3d 880, 883 (9th Cir. 2006) (ALJ "must consider all relevant evidence in the record, including . . . medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'") (quoting SSR 98-p). Relatedly, plaintiff argues that the ALJ improperly discounted her subjective statements, including her allegations of fatigue, by "not fully accounting for the context of materials or all parts of the testimony and reports" and the nature of fibromyalgia's symptoms. See Reddick v. Chater, 157 F.3d 715, 723 (9th Cir. 1998). Plaintiff also argues that the RFC is not supported by substantial evidence from the medical opinions of record.

Social Security Ruling 96-8p sets forth the policy interpretation of the Commissioner for assessing residual functional capacity. SSR 96-8p. Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity

4

reflects current "physical and mental capabilities"). RFC is assessed based on the relevant evidence in the case record, including the medical history, medical source statements, and subjective descriptions and observations made by the claimant, family, neighbors, friends, or other persons. 20 C.F.R. §§ 404.1545(a)(1), 404.1545(a)(3). When assessing RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work[.]" 20 C.F.R. §§ 404.1545(a)(4).

The ALJ found fibromyalgia to be a severe impairment. "Fibromyalgia is 'a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue.'" Revels v. Berryhill, 874 F.3d 648, 656 (9th Cir. 2017) (quoting Benecke v. Barnhart, 379 F.3d 587, 589 (9th Cir. 2004)). "Typical symptoms include 'chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue.'" Id. (quoting Benecke, 379 F.3d at 590). Social Security Ruling ("SSR") 12-2p "recognizes that the symptoms of fibromyalgia 'wax and wane,' and that a person may have 'bad days and good days.'" Revels, 874 F.3d at 657 (quoting SSR 12-2p). For this reason, the ruling "warns that after a claimant has established a diagnosis of fibromyalgia, an analysis of her [residual functional capacity] should consider 'a longitudinal record whenever possible.'" Id. (quoting SSR 12-2p). "In evaluating whether a claimant's residual functional capacity renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods, as described in SSR 12-2P and Benecke[, 379 F.3d 587]. The failure to do so is error[.]" Id. at 662.

At the October 2020 hearing, plaintiff testified that she suffered from chronic pain and fatigue. AT 77. She testified that she had pain in her neck, shoulders, lower back, hips, knees, and wrists, made worse by activities like doing dishes or laundry. AT 77. "I also get exhausted very easily." AT 77. Plaintiff took daily medications for pain but could still be "incapacitated" by actions like doing a load of laundry. AT 78. Plaintiff testified that she was diagnosed with fibromyalgia in 2017 and that her symptoms were "getting progressively worse." AT 78. Due to pain and stiffness, she could sit for two hours, stand for two hours, walk for ten minutes, and lift

five pounds. AT 79-80. She spent most of a typical day "sitting or laying down," the latter for about four hours a day. AT 80, 90. As to housework, she "did a few household things when I can . . . either cooking or laundry, but not every day." AT 80. She testified that she "occasionally" vacuumed but had not mopped or cleaned the house "in months" due to pain. AT 80-81. Plaintiff testified that she stayed in bed for 10 to 12 hours a night but woke up multiple times and never felt rested in the morning. AT 82. A series of cortisone shots helped with her pain symptoms. AT 86. She got a bad migraine once or twice a week that required her to lie down in a darkened room. AT 87. Plaintiff testified that her fatigue was "constant" and that she lacked the energy to do "the simplest of tasks." AT 88. Four or five days a week, she felt so fatigued that she could do little besides eat. AT 88-89.

The ALJ summarized plaintiff's testimony as follows:

> The claimant alleged that she was unable to perform basic work activities primarily because of widespread body pain and <u>fatigue from fibromyalgia</u>, as well as asthma. . . . Because of her symptoms, the claimant alleged that she had difficulty lifting more than about five pounds, standing for more than about 60-120 minutes at a time, walking for more than about 10 minutes at a time, sitting for more than 60-120 minutes at a time, performing postural activities, using her hands, breathing, and tolerating exposure to pulmonary irritants such as wildfire smoke. . . . The claimant reported that her symptoms were treated with medications and cortisone injections. However, she reported that her medications caused adverse side effects such as dizziness and lightheadedness.

AT 25 (emphasis added).

1. <u>Credibility</u>

The ALJ found that plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for a number of reasons. AT 25-26. Most notably, the ALJ found plaintiff's testimony about her allegedly debilitating fatigue less than fully credible, such that there were no fatigue-related limitations in the RFC.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. <u>See</u>, <u>e.g.</u>,

Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); see also Lambert v. Saul, 980 F.3d 1266, 1277–78 (9th Cir. 2020).

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).

The ALJ found objective evidence of impairment, i.e., that fibromyalgia was a severe impairment. As to disabling symptoms, however, the ALJ "found very scant evidence in the record to support [plaintiff's] allegations." AT 27. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (although lack of supporting medical evidence cannot form the sole basis for

7

discounting testimony, it is a factor that the ALJ can consider).

The ALJ cited the following factors in his credibility analysis:

**Normal physical examinations**. Musculoskeletal and neurological examinations "were repeatedly noted to be unremarkable" and "showed normal range of motion and gait." AT 26. This evidence has little bearing on plaintiff's reports of fibromyalgia-related fatigue, as the Ninth Circuit has recognized that the disease can fail to produce "symptoms that a lay person may ordinarily associate with joint and muscle pain." Benecke, 379 F.3d at 589; see Rosenof v. Kajakazi, No. 2:20-cv-01491 CKD, 2022 WL 105114, *5 (E.D. Cal. Jan. 11, 2022) (exam findings of normal gait, reflexes, sensation, and strength "do not direct directly bear" on plaintiff's alleged fibromyalgia-related fatigue).

**Improvement with routine care.** "Although the claimant received specialized care of her fibromyalgia from a rheumatologist, the treatment records reflect that the claimant's care was overall routine and conservative in nature, with follow up scheduled approximately every six months." AT 26, citing AT 787-804 (rheumatologist's treatment notes). Based on these progress reports by the specialist, the ALJ noted that plaintiff's "fibromyalgia was assessed as mild-to-moderate and [she] experienced significant improvement with Depo-Medrol injections with results lasting for up to six months." AT 26; see AT 787-782 (May 2019 note that fibromyalgia symptoms were intermittent and fluctuating, with pain relieved by medication; plaintiff "having minimal pain symptoms at this time"); AT 791-795 (February 2020 note that plaintiff's back pain was aggravated by rainy weather; "Patient states that every time she takes Depo-Medrol injection she improved significantly."); AT 804 (June 2020 note that "Patient gets significantly improved with Cortisone injection and it lasts for about 4-6 months."). While the rheumatologist advised plaintiff to maintain "good sleep hygiene," the fibromyalgia treatment notes do not mention fatigue symptoms and provide no evidentiary support for plaintiff's testimony that she suffered debilitating fatigue four or five days a week.

**Prior inconsistent statements.** The ALJ noted that plaintiff "repeatedly reported improvement or doing well during her appointments." AT 27, citing AT 712-722 (pulmonary function tests showing improved lung functioning), AT 787-804 (rheumatologist treatment notes).

The ALJ found this evidence inconsistent with plaintiff's "alleged severity of her symptoms and limitations." AT 27; compare AT 78 (plaintiff's testimony that her fibromyalgia symptoms were "getting progressively worse"). See Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022) (where record "shows both self-reported and objective improvement," ALJ "did not err in concluding that . . . ongoing conservative treatment and overall improvement are inconsistent with [claimant's] testimony as to the severity of their impairments.").

The ALJ also noted that, in December 2019, several months into the alleged period of disability, plaintiff "reported [to her doctor] that she had been planning to go back to work." AT 28, citing AT 834. The medical note states that she did "not feel well enough to do so at this time." AT 834. The reason for this is not entirely clear; plaintiff had recently undergone gall bladder surgery and was being treated for allergies and elevated liver enzymes. AT 834. However, the ALJ's interpretation of this evidence—that plaintiff's stated intention to return to work undercut her claims of debilitating pain and fatigue—is reasonable.

**Inconsistencies between testimony and conduct.** The ALJ found that plaintiff's statements about the severity and limiting effects of her symptoms were inconsistent with her reported conduct, writing as follows:

> [D]espite the claimant's allegations that she is unable to perform any work activity, the claimant endorsed the ability to attend to her personal care without problems, take care of her dog, prepare meals, wash dishes, do laundry, dust, occasionally vacuum, drive a car, take her mother to the grocery store and medical appointments, shop in stores for up to an hour, use the computer to shop, send text messages, and go out for coffee with her former work colleagues once a month. This evidence is further inconsistent with the claimant's allegations of disabling impairments and supports a finding that the claimant could work activity within the limitations assessed above.

AT 27, citing AT 321-328 (Adult Function Report) and hearing testimony.

An ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." Smartt, 53 F.4th at 499 (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007)). "Even if the claimant experiences some difficulty or pain, her daily activities may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Id. In her August 2019 Adult Function

9

1  Report, plaintiff wrote that she was able to prepare "full meals daily" and could do light chores
2  such as dishes, laundry, and dusting without help. AT 323. She was able to drive and went
3  shopping and to doctor's appointments unaccompanied. AT 324-325. The ALJ construed these
4  and other reported activities to undermine plaintiff's testimony of disabling symptoms, including
5  testimony that she that she lacked the energy to do "the simplest of tasks," had not been able to do
6  household tasks "in months," and, on most days, was too fatigued to do anything but eat.

   In assessing credibility, the ALJ did not consider the nature of fibromyalgia or interpret
8  plaintiff's testimony in the context of its particular symptoms. This was error. However, given
9  that the ALJ considered the longitudinal record and provided other valid reasons to discount
10 plaintiff's credibility, including "very scant evidence" of debilitating symptoms apart from her
11 subjective statements, the court finds this error harmless. Overall, the ALJ used the proper
12 process and provided proper reasons in his analysis; thus, the court defers to his credibility
13 determination.

   2. <u>Medical Opinions</u>

15    Plaintiff next argues that the RFC is unsupported by substantial evidence because the ALJ
16 did not rely on any medical opinion nor specify what evidence supported the assessed RFC for
17 medium work.

18    As to the medical opinion evidence, the ALJ rejected the January 2020 opinion of
19 plaintiff's treating physician, Dr. Gabriel Tanson, who "opined that the claimant would be unable
20 to perform the demands of even sedentary work." AT 27, citing AT 706-706 (Tanson opinion).
21 The ALJ explained that he did not find Dr. Tanson's opinion persuasive because (1) it was "quite
22 conclusory and cites to no objective clinical findings to support the extent and severity of the
23 limitations assessed"; (2) the assessed limitations were not supported by Dr. Tanson's treatment
24 notes; and (3) "the extent and severity of limitations assessed by Dr. Tanson are inconsistent with
25 the evidence in the record as a whole," including evidence of improvement with routine care and
26 plaintiff's reported daily activities. AT 27-28 (record citations omitted). Plaintiff does not argue
27 ////
28 ////

that the ALJ erred in evaluating this opinion under the applicable regulations[2], nor does the court find any such error.

In contrast to Dr. Tanson, two State agency medical consultants opined that plaintiff had no severe impairments of any kind. AT 28; see AT 122-126, 149-151, 162-164. The ALJ rejected these opinions as well, finding they were "not adequately supported by an explanation of the record and they are inconsistent with the claimant's treatment from specialists, including a rheumatology and allergy and immunology specialist." AT 28. As noted above, the ALJ found plaintiff to have three severe impairments: fibromyalgia, obesity, and asthma. "Giving the greatest weight to the claimant's subjective statements," the ALJ continued, "the undersigned finds the claimant has greater limitations than assessed by [the agency physicians]." AT 28. "In sum, the above residual functional capacity assessment [for medium work] is supported by the evidence in the record as a whole." AT 28.

Plaintiff contends that the ALJ impermissibly "considered all three opinions and split the difference" but that failed to specify how he arrived at the RFC. However, the ALJ noted that plaintiff had a history of treatment with two specialists and that she testified, with some credibility, to certain physical limitations. The ALJ was not required to base the RFC on a particular medical opinion but could permissibly resolve conflicts and ambiguities in the evidence, including partially crediting plaintiff's testimony about her limitations. See Bufkin v. Saul, 836 F. App'x 578, 579 (9th Cir. 2021) (unpub.) ("ALJs need not seek the opinion of a medical expert every time they review new medical evidence and make a RFC determination."),

---

[2] For disability applications filed on or after March 27, 2017, the Commissioner revised the rules for the evaluation of medical evidence at the administrative level. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg 5844-01 (Jan. 18, 2017). The revised rules provide that adjudicators for the Social Security Administration, including ALJs, evaluate medical opinions according to the following factors: supportability; consistency; relationship with the claimant; specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. § 416.920c(c)(1)-(5). The most important of these factors are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). Supportability is the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations. 20 C.F.R. § 416.920c(c)(1). Consistency is the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources, including the claimants themselves. 20 C.F.R. §§ 416.920c(c)(2), 416.902(j)(1).

citing <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1049 (9th Cir. 2001) (determining RFC "is the responsibility of the ALJ, not the claimant's physician") (citing 20 C.F.R. § 404.1545); <u>see also</u> <u>Stubbs-Danielson v. Astrue</u>, 539 F.3d 1169, 1174 (9th Cir. 2008) (ALJ may synthesize and translate evidence into an RFC assessment).  Here, the court finds that the plaintiff's assessed RFC was adequately explained and grounded in substantial evidence.

<u>CONCLUSION</u>

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No.19) is granted; and

3. Judgment is entered for the Commissioner.

Dated:  February 14, 2023

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/russell1595.bothdbissi.ckd